438 So.2d 1208 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Johnny E. POLLARD, Defendant-Appellant.
No. CR82-820.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Writ Denied January 6, 1984.
*1209 Charles Whitehead, Whitehead & McCoy, Andrew Vallien, Natchitoches, for defendant-appellant.
John G. Williams, Asst. Dist. Atty., Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
YELVERTON, Judge.
The defendant, Johnny E. Pollard, was charged under three separate bills of information with being a principal to aggravated battery, in violation of LSA-R.S. 14:34; being a principal to armed robbery, in violation of LSA-R.S. 14:64; and being a principal to simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2. He was tried on the consolidated charges before a twelve-man jury and found guilty as charged, except that in the case of burglary of an inhabited dwelling, the jury returned a verdict of simple burglary.
On the charge of aggravated battery defendant received a sentence of seven years at hard labor. On the charge of armed robbery he received a sentence of twenty-five years at hard labor without benefit of probation, parole or suspension of sentence. On the conviction of simple burglary, defendant received a sentence of seven years at hard labor. All sentences were ordered to run consecutively.
On appeal defendant has perfected three assignments, contending the trial court erred when it:
1. Ordered the defendant to be tried by a twelve-man jury on all three charges, in violation of LSA-Const.1974, Art. I, Sec. 17 and C.Cr.P. art. 782;
2. Failed to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1; and
3. Imposed excessive, cruel and unusual sentences.
FACTS
Darrell "Bo" Mayes, and Kim Harper, both juveniles, fell under the influence of the defendant, Johnny Pollard, age 42. The relationship began when the two juveniles started using and then selling drugs supplied by the defendant.
It happened eventually that Mayes and Harper were caught in possession of a quantity of drugs supplied to them by Pollard for distribution. The drugs were confiscated by the police. Pollard thereafter convinced the two juveniles that they owed him his financial loss occasioned by the confiscation.
The two juveniles were afraid of the defendant. Subtle threats of killing people who crossed him and of having connections with "hit men" created a fear that gave the defendant substantial influence over Bo and Kim. The defendant used this intimidation and the claimed indebtedness to induce the juveniles to commit certain crimes at his direction.
The first of these crimes occurred on the night of July 18, 1981. The juveniles burglarized the home of Ms. Sue Rhodes, a bed-ridden, deaf senior citizen, and stole numerous valuable items. The stolen goods were dutifully delivered to the defendant. The bill of information charging burglary arose from this case.
Telling them that the stolen goods did not wipe out the purported debt, Pollard planned the second crime for Bo and Kim. This was committed on July 24, 1981. The charges of armed robbery and aggravated battery arose out of this crime. The defendant sent the two juveniles to the apartment of Mr. and Mrs. Joe Thompson in Natchitoches with instructions to take their cash and jewelry then kill the couple. The defendant himself set up the robbery by impersonating an FBI agent telephoning the Thompsons, and telling them that two undercover agents would soon arrive and need their assistance and cooperation. Mr. *1210 Thompson was badly cut by Bo Mayes during the course of the robbery. The young assailants met resistance from the elderly couple and the noise alerted neighbors. The juveniles fled. Kim Harper was soon arrested. Bo Mayes subsequently surrendered and voluntarily made inculpatory statements to the police and described the situation that existed between himself and the defendant. Based on the statements of the juveniles, the police procured a search warrant to search a storage building rented to the defendant. The search of this storage building produced some of the stolen items taken in the July 18, 1981, burglary of Ms. Sue Rhodes.
ASSIGNMENT OF ERROR NUMBER 1
Defendant-appellant alleges that the trial court committed reversible error by permitting all three chargesaggravated battery, armed robbery, and simple burglary of an inhabited dwellingto be tried before a twelve-man jury.
We agree that it was error to try the aggravated battery charge before a twelve-person jury.
Article 1, Section 17 of the 1974 Louisiana Constitution provides in pertinent part:
"Section 17. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons ..."
See also La.C.Cr.P., Art. 782.
Applying this constitutional mandate, the Supreme Court has consistently held that the verdict returned by a jury composed of either more or less than the correct number of jurors is null. State v. Nedds, 364 So.2d 588 (La.1978); State v. Marcantel, 388 So.2d 383 (La.1980); State v. Jenkins, 406 So.2d 1352 (La.1981).
In the instant case the crime of aggravated battery (R.S. 14:34) is a relative felony requiring a jury of six persons. The trial and conviction before a twelve-person jury of that crime is null and must be reversed and set aside.
The other two charges were properly tried before a twelve-person jury. The punishment for both armed robbery and burglary of an inhabited dwelling is necessarily confinement at hard labor. R.S. 14:64 and R.S. 14:62.2.
Our conclusion that the conviction of simple burglary was not null requires further explanation. This is because at some point during the trial, the presiding judge and counsel for both sides apparently lost sight of the actual charge and began to treat it as simple burglary. The result: the defendant went to trial on a hard labor felony charge but the jury was instructed as to a relative felony.
Simple burglary under R.S. 14:62 carries a penalty of up to twelve years with or without hard labor. It is a relative felony and requires a six-person jury. Simple burglary of an inhabited dwelling under R.S. 14:62.2 is a more serious offense, the punishment for which is necessarily confinement at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, or more than 12 years. This charge requires a twelve-person jury.
The bill of information clearly charges defendant with burglary of an inhabited dwelling in violation of R.S. 14:62.2. It was read to the jury in that form at the beginning of trial. There is nothing in the record evidencing either a written or an oral amendment to the bill. Nevertheless, the trial court in its closing instructions mistakenly told the jury the defendant was charged with simple burglary and read to the jury the definition of that crime from R.S. 14:62. This mistake apparently went unnoticed by the State. Consistent with its instructions, although inconsistent with the bill of information, the trial court then gave to the jury a separate verdict sheet for that *1211 numbered bill of information containing only two of the three possible verdicts for simple burglary. The verdict sheet gave the jury two choices: "Guilty of simple burglary" and "Not guilty." Neither the State nor the defendant made any objection to these several errors. The jury returned a verdict of guilty of simple burglary. As stated earlier, the appellate briefs on both sides now treat the charge as merely simple burglary.
Under these circumstances we cannot say that defendant was entitled to a six-person jury. Under the formal bill of information, a twelve-person jury was mandated. Since simple burglary is of the same genus as simple burglary of an inhabited dwelling, and since the essential elements of simple burglary are included in the indictment for the offense charged, the verdict returned by the jury was responsive. The oversights of the trial court and the state were manifestly beneficial to the defendant. He cannot now reap an additional benefit by claiming he was tried before a jury of the wrong number. Had the jury been properly instructed as to the offense of burglary of an inhabited dwelling and its five responsive verdicts, and then returned a verdict of guilty of simple burglary, there would obviously be no merit to the contention that defendant's mode of trial was determinable by the verdict returned and not by the charge contained in the bill of information. We can conceive of no reason why the result should be different when a mistake by the district court leaves the jury with no choice except to return a verdict for a lesser and included offense rather than a verdict for the offense charged.
For these reasons we find that only the charge of aggravated battery was tried before a jury of the wrong number. To that extent this assignment of error has merit, and the conviction of aggravated battery must be reversed and set aside.
We do not find it necessary to reverse and set aside defendant's other two convictions. As to these two convictions defendant was properly tried before a jury of twelve persons. We note that the defendant never objected to the consolidation of the three charges (or, for that matter, to the mode of trial). The defendant was not prejudiced by the consolidated trials of these two charges with the charge of being a principal to aggravated battery, since the evidence presented would have been admissible if the defendant had only been charged with the two and the facts of the case were not so complex as to confuse the jury. See State v. Ponthier, 391 So.2d 1138 (La.1980).
ASSIGNMENT OF ERROR NO. 2
By this assignment defendant alleges that the trial judge failed to comply with the sentencing guidelines of C.Cr.P. art. 894.1.
In imposing sentence the requirements of art. 894.1 are met when the trial judge states the considerations taken into account and the factual basis therefor. State v. Donahue, 408 So.2d 1262 (La.1982).
In passing sentence the trial judge reviewed the factual basis and the seriousness of the defendant's crimes. He then noted that the defendant had pled guilty to the crime of extortion in 1963 for which he received a ten year suspended sentence. Due to the seriousness of the defendant's crimes and after a determination that the defendant was dangerous to society and would likely commit crimes in the future, the trial judge ruled out the possibility of a suspended sentence.
The appellant specifically argues that the trial court failed to mention defendant's personal history such as his employment record and physical health as mitigating circumstances. The presentence report provided to the trial judge indicated the defendant had formerly worked as a licensed practical nurse and was presently in the auto restoration business. The report also indicated the defendant's health was poor. The defendant was a diabetic and suffering from angina pectoris.
The trial court need not articulate every mitigating circumstance but the record must reflect an adequate consideration of art. 894.1 guidelines. State v. Grey, 408 *1212 So.2d 1239 (La.1982). In the present case we find the trial judge adequately considered the art. 894.1 guidelines.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 3
Through this assignment defendant contends that his sentence is excessive, cruel and unusual in that the trial judge imposed consecutive sentences instead of concurrent sentences.
La.Code Crim.P. art. 883 provides:
"If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently."
Whether or not the offenses here were "parts of a common scheme or plan", the trial judge is given a wide discretion in the imposition of sentences within statutory limits and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Molinario, 400 So.2d 596 (La. 1981).
In the light of defendant's prior record, the seriousness of his present convictions and his propensity for violence, we conclude that the trial judge did not abuse his discretion in imposing consecutive rather than concurrent sentences. See State v. Molinario, supra, and State v. Farria, 412 So.2d 577 (La.1982).
For the reasons assigned, defendant's conviction and sentence as to the crime of being a principal to aggravated battery is reversed and the case is remanded to the district court for a new trial as to that charge. Defendant's convictions and sentences as to the crimes of being a principal to armed robbery and simple burglary are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.
DOMENGEAUX, J., concurs and assigns brief reason.
DOMENGEAUX, Judge, concurring.
I agree completely with the majority opinion. I file this special concurring opinion, however, feeling that the Louisiana Constitution does not provide for nor mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See my concurring opinions in State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), writ denied; State v. Shelby, Jr., 438 So.2d 1166 (La.App. 3rd Cir.1983), handed down this date.